1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11

JOHN THOMAS ENTLER,

12
13

Plaintiff,

v.

14

FRANCISCO PERALES, *et al.*,

15

Defendants.

Case No. C07-5167 FDB/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**November 23, 2007**

16
17
18
19
20
21
22
23
24
25
26
27
28

        This matter comes before the Court on the Defendants' motion to dismiss Plaintiff's case.

(Dkt. # 15).  Defendants maintain that Plaintiff's complaint should be dismissed pursuant to Rule

12(b)(6), as Plaintiff has failed to state a claim upon which relief can be granted, and because the

Defendants, Washington State Department of Corrections (DOC) employees are entitled to

qualified immunity.  (*Id.*).  Plaintiff, a Washington State inmate, alleges First Amendment

retaliation by the Defendants in that they retaliated against him by writing false infractions against

him due to his history of filing grievances and lawsuits. (Dkt. # 5). Having reviewed the motion to

dismiss, Plaintiff's response (Dkt. # 19), and Defendants' reply (Dkt. # 20), and the balance of the

record, the Court finds that the motion should be denied.

REPORT AND RECOMMENDATION - 1

1

2

### I.  STANDARD OF REVIEW

3

4       In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may grant a

5   dismissal for failure to state a claim "if it appears beyond doubt that the plaintiff can prove no set

6   of facts in support of his claim that would entitle him to relief." *Keniston v. Roberts*, 717 F.2d 1295,

7   1300 (9th Cir. 1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "Dismissal can be

8   based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

9   cognizable theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

10      On a motion to dismiss, material allegations of the complaint are taken as admitted and the

11  complaint is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411,

12  421 (1969), reh'g denied, 396 U.S. 869 (1969); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir.

13  1977). Where a plaintiff is proceeding *pro se*, his allegations must be viewed under a less stringent

14

15  standard than allegations of plaintiffs represented by counsel. *Haines v. Kerner*, 404 U.S. 519

16  (1972), reh'g denied, 405 U.S. 948 (1972). While the court can liberally construe a *pro se* plaintiff's

17  complaint, it cannot supply an essential fact that the plaintiff has failed to plead. *Pena v. Gardner*,

18  976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d

19
20  266, 268 (9th Cir. 1982).

21

22      ### II.  PLAINTIFF'S COMPLAINT

**A.      Plaintiff's Allegations**

23      <u>Franciso Perales</u>:  According to the Plaintiff, Defendant Perales, a corrections officer,

24  wrote a general infraction against him in retaliation because the Plaintiff wrote a grievance against

25

26

27

28  REPORT AND RECOMMENDATION - 2

Perales.  (Dkt. # 5, Affidavit at p. 3, ¶¶ 7-8)[1].  Defendant Perales had knowledge of Plaintiff's complaints about him and the events which led up to Plaintiff's filing the grievance.  (*Id*., pp. 1-2, ¶¶ 1-3).  Defendant Perales told Plaintiff to grieve him.  (*Id*., pp. 2-3), ¶¶ 4-5).  When Plaintiff exercised his right to file that grievance, Plaintiff alleges that the following morning, Defendant Perales gave Plaintiff a false infraction.  (*Id*., p. 5, ¶¶ 6 and 7).   Following a hearing, Plaintiff was found guilty of the general infraction and was given a reprimand. (*Id*., p. 4, ¶ 12). The decision was upheld by the Superintendent upon appeal. (*Id*., p. 5, ¶ 15).

Sara Garmire:  Plaintiff alleges that Defendant Garmire, on or about December 1, 2006, wrote a major infraction against him in retaliation for Plaintiff's kite and his threat to make her a defendant in a lawsuit if she continued to lie.  (*Id*., pp. 7-9, ¶¶ 8-13).  Plaintiff asserts that the infraction written by Defendant Garmire was false, was intended to chill his First Amendment rights, and did not reasonably advance legitimate penological goals.  (*Id*., pp. 8-9, ¶ 13).

The disciplinary committee dismissed the infraction written by Defendant Garmire based on the written kites and testimony, found that he had a right to file a grievance or lawsuit and found no "intimidation" of Defendant Garmire by Plaintiff, as she alleged.  (*Id*., p. 8, ¶ 10).

Margaret Gilbert:  Plaintiff alleges that Defendant Gilbert wrote a major infraction against him in retaliation for his writing grievances and letters against her, that she intended to chill his First Amendment rights," and the writing of the major infraction did not reasonably advance legitimate penological goals." (*Id*., pp. 10-13, ¶¶ 5-9, Attachment, p. 1).

---

[1]Plaintiff's Complaint consists of two numbered sections, the preprinted pages numbered 1 through 4, and the handwritten affidavit, numbered 1 through 13.  The attachments are unnumbered and do not match the identification set out in Plaintiff's affidavit.  (Plaintiff refers to exhibits A-H in his affidavit but only filed 5 attachments, which are not identified by exhibit letter).  The Complaint and Affidavit are referred to using the same numbers used by Plaintiff.  The attachments are referred to using the page numbers in the order they were electronically filed (pages 1 through 11).

REPORT AND RECOMMENDATION - 3

Plaintiff told Defendant Gilbert that he was going to grieve her, write letters against her and complain to the governor about her. (*Id*., p. 10-11, ¶¶ 2, 5).  In response, Defendant Gilbert initiated a "false infraction" against the Plaintiff under the guise of "infractable" behavior.  (*Id*., p. 12, ¶ 9).  Defendant Gilbert's proffered reasons for the disciplinary charge against Plaintiff was for "using the kite system in an attempt to intimidate and coerce her into allowing Mr. Entler privileges not allowed by policy and/or operational memorandum." (*Id*., p. 10, ¶ 5).  The written infraction did not identify what privileges the Plaintiff was not allowed according to "policy and/or operational memorandum."

Following a hearing, Plaintiff was found not guilty and the infraction was dismissed. The Hearing Officer found that Plaintiff has the "right to write to the fore mentioned individuals." (Dkt. # 5, Attachment 1).

**B.    Defendants' Motion to Dismiss**

The general infraction filed by Defendant Perales resulted in Plaintiff receiving a warning and the two serious infractions filed by Defendants Garmire and Gilbert were dismissed.  Thus, Defendants argue that Plaintiff's claims must be dismissed because he has not suffered any actual injury. (Dkt. # 15). Defendants note that Plaintiff fails to plead any facts setting forth actual injury, and his vague allegations that Defendants' actions "chill his First Amendment rights" are insufficient, citing to *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.)

**III.  DISCUSSION**

**A. Retaliation Claim**

Of fundamental import to prisoners are their First Amendment "right[s] to file prison

grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield. *See, e.g., Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995) ("[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit for qualified immunity purposes. That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits.") *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (internal citations omitted).

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *See, e.g., Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994).

Defendants argue that Plaintiff has failed to adequately state a claim because he has suffered no injury, "unlike the Plaintiff in <u>Rhodes</u> who allegedly had his property withheld and destroyed, . . . and the Plaintiff in <u>Hines</u> who received ten days confinement and television loss, here Plaintiff suffered no harm." (Dkt. # 20, p. 2, citing *Rhodes*, 408 F.3d 559; *Hines v. Gomez*, 108 F.3d 265 (9th Cir. 1997)).

Defendants' insistence that Plaintiff suffer harm in addition to alleging a chilling effect is

not correct.  In *Hines*, the Court stated:

> The injury asserted is the retaliatory accusation's chilling effect on Hine's First
> Amendment rights, not the additional confinement or the deprivation of the
> televison.  We hold that Hine's failure to demonstrate a more substantial injury does
> not nullify his retaliation claim.

108 F.3d at 269.

In *Rhodes*, the Court noted that if:

> Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered
> harm would suffice, since harm that is more than minimal will almost always have a
> chilling effect.  Alleging harm *and* alleging the chilling effect would seem under the
> circumstances to be no more than a nicety.

408 F.3d at  568 n. 11 (internal citations omitted).

In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's]conduct."  *Sloman v. Tadlock*, 21 F.3d 1462 (9th Cir. 1994)( citing *Mendocino Env'l Ctr. v. Mendocino County*, 14 F.3d 457, 464 (1994)). This requires only a demonstration that defendants "*intended* to interfere with [Plaintiff's] First Amendment rights."  *Mendocino Env'l Ctr.*, 14 F.3d at 464 (emphasis added). Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, the proper inquiry asks "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."  *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C.Cir. 1996), *vacated on other grounds*, 520 U.S. 1272 (1997).

The intent to inhibit speech may be demonstrated either through direct or circumstantial evidence.  *See Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1448 (9th Cir. 1997) (circumstantial evidence is sufficient to survive summary judgment motion).  For example, in

REPORT AND RECOMMENDATION - 6

*Hines v. Gomez*, the Ninth Circuit held that circumstantial evidence that an inmate had a reputation for filing grievances and had told a guard that he planned to file a grievance, combined with the jury's rejection of the guard's purported reason for punishing the inmate, "warrants the jury's finding that [the guard] filed the disciplinary report in retaliation for [the prisoner's] use of the grievance system."  108 F.3d at 268.

Here, Plaintiff has alleged that Defendants (1) filed false infractions against him (2) because he (3) exercised his First Amendment rights to file prison grievances and otherwise seek access to the legal process, (4) that Defendants' actions chilled his First Amendment rights, and (5) Defendants' actions were not undertaken to advance legitimate penological purposes.  In addition, Plaintiff has alleged that Defendants were aware of his litigation activities and in particular, that he was going to file grievances and/or lawsuits against them.  For example, as to Defendant Perales, Plaintiff alleges that Defendant Perales filed a false infraction against him the morning after Plaintiff filed a grievance against him. (Dkt. # 5, Affidavit, p. 5, ¶¶ 6 and 7).  As in *Hines*, the fact that Plaintiff may have a reputation for filing grievances and told the Defendants of his plans to file grievances against them, may lead a jury to reject the Defendants' purported reason for issuing the disciplinary report and conclude that the report was issued in retaliation for Plaintiff's use of the grievance process.

Accordingly, the undersigned finds that Plaintiff has stated a viable claim of First Amendment retaliation and recommends that Defendants' motion to dismiss (Dkt. # 15) be denied.

**B.     Qualified Immunity**

Defendants request that, in the event this Court determines that the Defendants' actions of filing infractions against Plaintiff amounted to a constitutional violation, Defendants are entitled to qualified immunity.   (Dkt. # 15)  Defendants argue that, in this case, a reasonable prison official

would believe that filing infractions, a part of the prison disciplinary process, was lawful.  (*Id.*).

Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 3039 (1987). The qualified immunity doctrine "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 537 (1991). Because the day to day decisions of prison officials are accorded deference by the courts under the principles espoused by *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861 (1979), these officials are entitled to a corresponding accommodation if a reasonable error in judgment is made. "This accommodation . . . exists because 'officials should not err always on the side of caution' because they fear being sued." *Hunter*, 502 U.S. at 228, 112 S. Ct. at 537 (citation omitted).

A trial court confronted with an assertion of qualified immunity should first determine whether the plaintiffs have properly asserted a constitutional violation. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793 (1991). It is the plaintiffs who bear the burden of proving that the specific right claimed was clearly established at the time of the alleged misconduct. *Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012 (1984). Until this burden is met, the Defendants are presumed to be immune from suit and entitled to dismissal. *ACLU of Maryland v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993).

Defendants argue that they are entitled to qualified immunity because "a reasonable prison official would believe that filing infractions, a part of the prison disciplinary process, was lawful."

REPORT AND RECOMMENDATION - 8

1  (Dkt. # 15).     However, for purposes of determining qualified immunity at the motion to dismiss

2  stage, the Court must take the allegations stated in Plaintiff's complaint as true.   Read in the light

3  most favorable to Plaintiff, the complaint alleges that Defendants knowingly filed false infractions

4  against Plaintiff that were intended to chill his First Amendment right to participate in the grievance

5  system.

6

7        The prohibition against retaliatory punishment is 'clearly established law' in the Ninth

8  Circuit for qualified immunity purposes.  *Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995)

9  (internal citations omitted).     Whether the Defendants' conduct was reasonable involves a factual

10  analysis of the circumstances surrounding Defendants' actions and a determination of whether a

11  reasonable official similarly situated would have been aware that his actions violated the law, an

12  inquiry difficult to conduct at the [motion to dismiss] stage.  *Hydrick v. Hunter*, —F. 3d —, 2007

13  WL 2445998 (9th Cir. 2007).

14

15        In this case, Defendants argue that no reasonable official would believe that filing

16  infractions, a part of the prison disciplinary process, was unlawful.  However, read in the light most

17  favorable to Plaintiff, the Complaint alleges that the Defendants wrote false infractions with the

18  intent to chill his First Amendment rights.  No reasonable officer could believe that he is entitled to

19  write a *false* infraction in retaliatory punishment with the intent to stop a prisoner from engaging in

20  the grievance process or believe that writing a *false* infraction for that purpose was lawful or that

21  doing so advanced any legitimate penological goals.  Qualified immunity does not protect officers

22  that knowingly violate constitutional rights.  *Grant v. City of Long Beach*, 315 F.3d 1081, 1088-89

23  (9th Cir. 2002).

24

25        Accordingly, the undersigned recommends that Defendants' motion to dismiss on qualified

26  immunity grounds be denied.

27

28  REPORT AND RECOMMENDATION - 9

# IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Defendants' motion to dismiss (Dkt. # 15) be **DENIED.**  A proposed order accompanies this Report and Recommendation. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk of the Court is directed to set the matter for consideration on **November 23, 2007**, as noted in the caption.

DATED this  26th  day of October, 2007.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10